# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 11-CR-10200-RWZ |
| | ) | |
| Marcel Henderson, | ) | |
| *Defendant* | ) | |

## SENTENCING MEMORANDUM

### I.     Introduction

Defendant Marcel Henderson respectfully requests that the Court conclude that he is not an armed career criminal and further conclude that the six years he has already served pending trial (a period which equates to an 84-month sentence, assuming ordinary earned good time), is a sentence consistent with the Sentencing Guidelines and "sufficient but not greater than necessary" to serve the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Mr. Henderson therefore requests that the Court sentence him to a "time served" sentence.

### II.     Argument

#### A.  Mr. Henderson does not qualify as an Armed Career Criminal.

*Overview.* Over the last six years, the Supreme Court has effected a sea change in the way sentencing judges must interpret the Armed Career Criminal Act, 18 U.S.C. §924(e)(2)(B). That statute, as this Court certainly knows, requires a sentencing judge to impose (at least) a 15-year minimum mandatory sentence on a defendant convicted in federal firearms case if, under the ACCA, he is found to be an "Armed Career Criminal." Since 2010, the Supreme Court has

1

repeatedly reversed judgments of Courts of Appeals because courts have failed to follow Supreme Court precedent instructing sentencing judges how to interpret the ACCA.[1]

These reversals share a common characteristic: in each, the defendant's prior convictions *seem* like the kind of crimes that should, as a matter of common sense, qualify as ACCA predicates. But on closer examination, those prior convictions do not actually qualify as ACCA predicates under the exacting criteria the Supreme Court's cases require sentencing judges to use to determine whether a prior conviction can serve as a basis for an ACCA sentencing enhancement. Courts of Appeal, this Court, and other District Judges in this District, have recognized that the Supreme Court's recent cases have dramatically changed the landscape in ACCA prosecutions. For example, this Court has previously ruled that unarmed robbery is not an ACCA predicate. *Overka v. United States*, Crim. No. 1:08-cr-10265-RWZ, at 6–7 (D. Mass. Oct. 21, 2016), ECF No. 30. And Judge Stearns has ruled that a conviction under the Massachusetts armed robbery statute does not qualify as an ACCA predicate, *see United States v. Dubose*, Crim. No. 04-10291-RGS, 2016 U.S. Dist. LEXIS 174994, at *3 n.1 (D. Mass. Dec. 19, 2016), as have two Courts of Appeal. *See United States v. Parnell*, 818 F.3d 974, 978 (9th Cir. 2016); *United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016).

This case follows the same pattern: Defendant Marcel Henderson's prior convictions might *once* have been thought to qualify as Armed Career Criminal Act predicates. But the Supreme

---

[1] *See, e.g., Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 570 U.S. ____, ;133 S. Ct. 2276 (2013); *(Curtis) Johnson v. United States*, 559 U.S. 133 (2010).

B4634422.9

Court's recent cases show that Henderson is not, in fact, an Armed Career Criminal.

   *Mr. Henderson's Alleged Predicates.*  Under the Armed Career Criminal Act ("ACCA"), any person convicted of being a felon in possession of a firearm faces a fifteen-year mandatory minimum sentence if that person has three prior convictions for a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e)(1).  Mr. Henderson has never been arrested for or convicted of a "serious drug offense."  Rather, the PSR concludes, and the government argues, that three of Mr. Henderson's prior convictions qualify as "violent felonies" under the statute. In particular, the PSR identifies these three alleged convictions as "violent felonies":[2]

---

[2] Solely for the sake of this Memorandum, Mr. Henderson refers to certain alleged offenses as convictions. As described in detail later in this Memorandum, Mr. Henderson specifically does not admit that he is the person named in the alleged offenses and calls on the government to prove, beyond a reasonable doubt, that:

- Mr. Henderson was, in fact, the individual charged in the crimes resulting in the conviction described in the PSR; and

- Mr. Henderson was represented by constitutionally effective counsel, *Gideon v. Wainwright*, 372 U.S. 335 (1963), and that his other constitutional rights were protected in the sentencing process, as reflected by competent evidence, such as a plea colloquy, a plea agreement, or a sentencing transcript.  *See, e.g.*, *Alleyne v. United States*, 133 S. Ct. 2151 (2013); *Henderson v. Morgan*, 426 U.S. 637, 646 (1976); *United States v. Tucker*, 404 U.S. 443, 448–49 (1972); *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969).

Mr. Henderson notes that the government has argued that he "admitted" that he was the person convicted of these offenses in his 2003 PSR.  The Court should reject that argument. Whatever the evidentiary basis of the government's contention—and the defendant does not admit that basis is adequate—relying on the 2003 PSR would violate defendant's Fourth and Fifth Amendment rights.  Any statements—or failure to object—by Henderson in his 2003 PSR interview followed the jury verdict in *United States v. Henderson*, 1:01-cr-10264-MLW (D. Mass 2002). Henderson's conviction in that case was reversed and vacated in *United States v. Henderson*, 463 F.3d 27, 28 (2006), after the First Circuit held that that the police motor vehicle stop in that case violated Henderson's Fourth Amendment rights.  Because any PSR interview conducted followed a conviction based on illegally obtained evidence, the statements must themselves be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).  Further, because the District Court ordered a Pre-Sentence Investigation in 1:01-

B4634422.9

| PSR ¶ | Year | Age at Conviction | Offense Name or Names | Statute | Sentence |
|---|---|---|---|---|---|
| 35 | 1990 | 19 | Armed Assault with Intent to Murder<br>Assault by Means of Dangerous Weapon | GL c. 265 §17<br>GL c. 265 §18 | 5 years/Concord<br>5 years/Concord |
| 38 | 1996 | 25 | Armed Assault with Intent to Rob<br>Armed Robbery (Handgun) | GL c. 265 §17<br>GL c. 265 §18 | 3 years to<br>3 years one day |
| 39 | 1999 | 28 | Aggravated Assault (Florida) | Fla. St. §784.021 | 18 months<br>(time served) |

*Violent Felonies under the ACCA*. To qualify as a "violent felony," the offense must have had "as an element the use, attempted use, or threatened use of physical force against the person of another" or been "burglary, arson, or extortion." 18 U.S.C. § 924(e)(2)(B); *see also United States v. Johnson (Johnson II)*, 135 S. Ct. 2551, 2557 (2015) (holding the remainder of the second clause, beyond the enumerated offenses, unconstitutionally vague). The first clause is sometimes referred to as the "force clause." *See United States v. Holloway*, 630 F.3d 252, 256 (1st Cir. 2011). Mr. Henderson has never been convicted of one of the enumerated offenses; the government argues only that he qualifies as an armed career criminal under the force clause of the Act.

Not all offenses involving "force" qualify as predicate offenses under the ACCA's force clause. The physical force required to qualify as an ACCA predicate must be "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States (Johnson I)*, 559 U.S. 133, 138 (2010) (explaining the use and placement of the term "violent" in the statute "connotes a substantial degree of force").

---

cr-10264-MLW, and any statements Henderson made in his Pre-Sentence Investigation occurred in connection with that court-ordered investigation, any such statements were compelled and given involuntarily, in violation of Henderson's Fifth Amendment rights.

B4634422.9

*Divisible and Indivisible Statutes.* When analyzing whether a prior conviction qualifies as a predicate offense under the ACCA, the court must first determine whether a statute is divisible. If a statute "creates two separate sets of elements for a single crime (effectively creating two different offenses with the same name)," the statute is divisible. *See Dubose*, 2016 U.S. Dist. LEXIS 174994, at *3 n.1 (citing *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)). In divisible statutes, one or more elements are set out "in the alternative." *Descamps*, 133 S. Ct. at 2281–82. The Supreme Court clarified in *Mathis v. United States* that a statute is only divisible if elements themselves are set in the alternative. 136 S. Ct. 2243, 2248 (2016). If there are two methods, or "factual means," of proving an element within a statute, the statute is indivisible. *Id.* at 2249, 2257.

If the statute is indivisible, a sentencing court applies the "categorical approach" laid out in *Taylor v. United States*, 495 U.S. 575, 600 (1990). *Descamps*, 133 S. Ct. at 2283. Under this approach, a sentencing court looks to the elements of the purportedly qualifying conviction as defined by its relevant statute and compares those to the elements of the crime described in the guidelines. *See United States v. Castro-Vazquez*, 802 F.3d 28, 35 (1st Cir. 2015). If the statute's sweep is broader than the generic crime, "then the conviction cannot count as a predicate offense, '*even if* the defendant actually committed the offense in its generic form.'" *Id.* (quoting *Descamps*, 133 S. Ct. at 2283). The focus is solely on the law; the court "cares not a whit" about the facts. *Mathis*, 136 S. Ct. at 2248. Under the categorical approach, a court considers only the offense's legal definition, to determine whether the "person convicted of the offense has 'necessarily' been found guilty of [violent] conduct." *United States v. Martinez*, 762 F.3d 127, 133 (1st Cir. 2014).

The Probation Department has concluded, and the government argues, that Mr. Henderson's 1996 armed robbery and armed assault with intent to rob conviction (PSR ¶ 38), his

5

1999 nolo contendere aggravated assault plea in Florida (PSR ¶ 39), and his 1990 armed assault with intent to murder and assault by means of a dangerous weapon conviction (PSR ¶ 39) all qualify as "violent felonies." PSR ¶ 35. For Mr. Henderson to qualify as an armed career criminal, the government must show all three of those convictions qualify. § 924(e)(1). In fact, none is properly an ACCA predicate.

**1.    Mr. Henderson's 1996 armed robbery conviction (PSR ¶ 38) is not a qualifying conviction under ACCA.[3]**

The question of whether Massachusetts armed robbery qualifies as a predicate offense for the ACCA after the Supreme Court's recent cases is not one of first impression. Other courts have held Massachusetts armed robbery convictions do not qualify as predicate offenses for the ACCA. *See Parnell*, 818 F.3d at 978; *Redrick*, 841 F.3d at 484. Indeed, Judge Stearns of the District of Massachusetts addressed the issue in December of 2016 and found that a conviction of armed robbery in Massachusetts does not qualify as a predicate offense under the ACCA. *Dubose*, 2016 U.S. Dist. LEXIS 174994, at *7–8; *see also McCurdy v. United States*, 1:06-cr-00080, 2017 U.S. Dist. LEXIS 1947, at *26–27 (D. Me. Jan. 6, 2017) (finding same for Maine armed robbery); *Overka*, Crim. No. 1:08-cr-10265-RWZ, at 6–7, ECF No. 30 (finding same for Massachusetts unarmed robbery); *Castro-Vazquez*, 802 F.3d at 35 (finding same for Puerto Rico armed robbery)[4].

---

[3] Mr. Henderson also specifically objects to the use of this conviction absent reliable evidence, such as a colloquy, plea agreement, or sentencing transcript, to demonstrate that he is the person identified in the charging documents and that his constitutional rights were respected in connection with the case. Mr. Henderson sought a required finding of not guilty following the government's evidence in this case because, among other reasons, the names of the alleged victims of the offense described in the police report do not match the names of the alleged victim's listed on the docket sheet and indictment.

[4] The First Circuit in *Castro-Vazquez* was assessing the defendant's qualifications under United States Sentencing Guidelines § 2K2.1, rather than under the ACCA, but, as the court noted, the analysis under §2K2.1 and the ACCA is substantially the same. *See* 802 F.3d at 35–38, 35 n.4.

B4634422.9

This Court should similarly find that armed robbery does not qualify as a predicate offense under the ACCA.

In Massachusetts, "armed robbery is defined as the offense of robbery while in possession of a dangerous weapon." *Dubose*, 2016 U.S. Dist. LEXIS 174994 at *3 (citing Mass. Gen. Laws ch. 265, § 17). Massachusetts courts define the first element, robbery, as the "taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to steal," Mass. Gen. Laws ch. 277 § 39. *See, e.g.*, *Commonwealth v. Joyner*, 4 N.E.3d 282, 293 (Mass. 2014). The armed robbery statute is "indivisible" because it does not set out "one or more elements of the offense in the alternative." *See Descamps*, 133 S. Ct. at 2281–82; *see also Parnell*, 818 F.3d at 978. Even if there are two factual theories on which armed robbery may be based, the court must still apply the categorical approach. *See Mathis*, 136 S. Ct. at 2249. Thus, here, the court must take a categorical approach, looking only at the elements of the offense: (1) being armed; and (2) committing a robbery.

Under Massachusetts law, a conviction for armed robbery does not necessarily require violent force and therefore does not qualify as a violent felony. While a defendant must be armed with a dangerous weapon, the dangerous weapon need not be *used* during the robbery. *See Commonwealth v. Rogers*, 945 N.E.2d 295, 300 n.4 (Mass. 2011). The victim need not even be aware of the weapon's presence for a conviction under the statute. *King v. McEachern*, 665 F.3d 247, 253 n.7 (1st Cir. 2011) (collecting Massachusetts cases); *see also McCurdy*, 2017 U.S. Dist. LEXIS 1947 at *22–25 (noting, holding Maine armed robbery is not an ACCA predicate, that Massachusetts law is clearer than Maine law on the issue); *Redrick*, 841 F.3d at 484 (distinguishing Maryland's armed robbery statute from Massachusetts', where, in Maryland, the *use* of the deadly weapon is required). Proving the element that a defendant was armed does not prove that force,

7

let alone violent force, was used. *See Dubose*, 2016 U.S. Dist. LEXIS 174994, at *5. Thus, armed robbery's validity as an ACCA predicate hinges on whether *robbery*—armed or unarmed— necessarily requires violent force.

The amount of force necessary to constitute robbery under Massachusetts law is minimal and does not meet the ACCA requirement of violent force. The degree of force required to prove robbery is "immaterial so long as it is sufficient to obtain the victim's property 'against his will.'" *Dubose*, 2016 U.S. Dist. LEXIS 174994, at *4 (quoting *Commonwealth v. Jones*, 283 N.E.2d 840, 843–44 (Mass. 1972) (quoting Mass. Gen. Laws ch. 277 § 39)) (holding merely snatching a purse off the arm of a victim constituted sufficient force to constitute robbery); *see also Commonwealth v. Brown*, 318 N.E.2d 486, 487 (Mass. App. Ct. 1974) (holding same for pulling a purse from a victim's hand). Massachusetts' expansive understanding of robbery well exceeds the law of most states. *See Jones*, 283 N.E.2d at 844 (adopting its definition of "force" despite "most jurisdictions" having held otherwise); *see also Commonwealth v. Zangari*, 677 N.E.2d 702, 703 (Mass. App. Ct. 1997) (explaining Massachusetts "firmly adopted" its rule "in the face of contrary authority").

The minimal force sufficient to qualify for a robbery conviction under Massachusetts law is precisely the "slightest offensive touching" the Supreme Court has held does not amount to the "violent force" required by the ACCA. *See Johnson I*, 559 U.S. at 139. Rather, for ACCA purposes, "force" must amount to "*violent* force," which is "a degree of power that would not be satisfied by the merest touching." *Id.* at 139–40. Furthermore, committing a robbery by minimal force does not demonstrate that the defendant is *willing* to use violent force to commit the offense. *See Dubose*, 2016 U.S. Dist. LEXIS 174994, at *6–7. To satisfy the element of robbery under Massachusetts law, the court need not find that the "robber actually harbored a willingness to inflict bodily harm or otherwise use violent force." *Id.*; *see McCurdy*, 2017 U.S. Dist. LEXIS

1947, at 23–24. Even if Massachusetts law did require such a finding, the ACCA's "force clause requires the actual, attempted or *threatened* use of physical force, not a mere uncommunicated willingness or readiness to use such force." *Parnell*, 818 F.3d at 980 (citation omitted).

A defendant convicted of robbery in Massachusetts, then, which may be found even in cases of *de minimis* touching, has not necessarily been found guilty of a "violent felony." Indeed, this Court held this to be true of unarmed robbery in October of 2016, explaining "[t]he notion that robbery is not a 'violent felony' as that term is defined in the [ACCA] . . . is compelled by . . . Massachusetts law,' as established in *Jones*." *Overka*, 1:08-cr-10265-RWZ, at 6 (quoting *Parnell*, 818 F.3d at 982 (Watford, J., concurring)) (alterations in original); *see also United States v. Smith*, Crim. No. 3:14-cr-30023-MGM-1 (D. Mass. Nov. 29, 2016), ECF No. 125. This is no less true of armed robbery than unarmed robbery; as explained above, the presence of a concealed weapon on the scene does not change this result.

The First Circuit's 2011 decision in *United States v. Luna*, 649 F.3d 91 (1st Cir.), *cert denied*, 132 S. Ct. 861 (2011), does not require a different outcome. In *Luna*, the First Circuit rejected the defendant's argument that armed robbery "involving threatening words or gestures" involves anything other than the threat of force, and held that the threat involved is a threat of force. *Id.* at 108. However, the court did not directly address the issue of whether the force required by armed robbery necessarily involved physical force. *Id.* at 108–09. The First Circuit stated that the defendant "provided no reason for [it] to conclude that the type of force involved in armed robbery is *not* 'violent force—that is, force capable of causing physical pain or injury,'" and refused to raise the issue *sua sponte*. *Id.* (emphasis added). Thus, as the *Dubose* court noted, the question of whether the force involved in armed robbery meets the requirements of *Johnson I* was "not briefed in *Luna*, and the dictum from the Circuit is not binding on this court." 2016 U.S.

9

Dist. LEXIS 174994, at *6. Massachusetts law makes clear that even when a defendant's conviction rests on a theory of assault and putting in fear, or constructive force, rather than actual force, the force involved may be negligible. *See Jones*, 283 N.E.2d at 843 ("Whether actual or constructive force is employed, *the degree of force is immaterial* so long as it is sufficient to obtain the victim's property 'against his will.'" (quoting Mass. Gen. Laws ch. 277 § 39) (emphasis added)). *Luna* does not contradict this.

The First Circuit decided *Luna* in 2011, and Supreme Court rulings from the last five years dictate that Massachusetts armed robbery cannot qualify as a predicate offense under the ACCA. *See Mathis*, 136 S. Ct. at 2257 (holding a statute with a single set of elements that can be established through alternative factual theories is indivisible); *Descamps*, 133 S. Ct. at 2283; *see also Dubose*, 2016 U.S. Dist. LEXIS 174994, at *7–8. Indeed, since *Luna*, the First Circuit has recognized armed robbery does not necessarily require the violent force necessary to qualify as an ACCA predicate. *See Castro-Vazquez*, 802 F.3d at 37–39 (remanding on the basis that the sentencing judge did not inquire whether the defendant could have been convicted under Puerto Rican armed robbery law merely by the "slightest use of force," which would fall far short of the "violent force" requirement). On remand, the district court, noting that robbery under Puerto Rico law includes purse-snatching, held that armed robbery could not serve as an ACCA predicate. *United States v. Castro-Vazquez*, Crim. No. 12-cr-007350-1, 2016 U.S. Dist. LEXIS 46408, at *12–13 (April 4, 2016).

This year alone, the Ninth Circuit, the D.C. Circuit, and district judges in the First Circuit have held Massachusetts armed robbery is not an ACCA predicate. *See Parnell*, 818 F.3d at 978; *Redrick*, 841 F.3d 478; *see also Dubose*, 2016 U.S. Dist. LEXIS 174994, at *7–8; *Ford v. United States*, Crim. No. 05-10326-FDS, 2016 U.S. Dist. LEXIS 176630 (Dec. 21, 2016) (granting

10

petitioner's certificate of appealability to determine, *inter alia*, whether armed robbery qualifies as a violent felony). *But see United States v. Moon*, Crim. No. 11-CR-10223-DJC (D. Mass. Aug. 4, 2016), ECF No. 249 (holding, in a docket order, that *Luna* dictates armed robbery is an ACCA predicate). First Circuit courts analyzing comparable armed robbery statutes have come out the same way. *See Castro-Vazquez*, 802 F.3d at 38–39; *see also McCurdy*, 2017 U.S. Dist. LEXIS 1947, at *26–27. Other Circuits analyzing armed robbery statutes that sweep less broadly than Massachusetts' armed robbery law have also held armed robbery is not an ACCA predicate. *See United States v. Jones*, 830 F.3d 142, 149 (2d Cir. 2016) *vacated on other grounds,* No. 15-1518, 2016 U.S. App. LEXIS 17868 (2d Cir. Oct. 3, 2016) (holding a conviction under the New York statute defining armed robbery as "forcible stealing" while armed is not ACCA predicate); *United States v. Eason*, 829 F.3d 633 (8th Cir. 2016) (holding same under Arkansas statute); *see also United States v. Gooch*, No. 2: 04-CR-0262-WFN-1, 2016 U.S. Dist. LEXIS 57458 (E.D. Wash. April 29, 2016) (holding same under Washington statute). Thus, applying recent Supreme Court precedent, this Court should follow the post-*Luna* guidance of the First Circuit, other district judges within the First Circuit, and other Circuits, and hold that Mr. Henderson's armed robbery conviction does not qualify as an ACCA predicate offense.

B4634422.9

2.     **Mr. Henderson's 1996 conviction (PSR ¶38) for armed assault with intent to rob also does not qualify under the ACCA.**

In Massachusetts, armed assault with intent to rob is defined as "assault[ing] another with intent to rob," while armed with a dangerous weapon. Mass. Gen. Laws ch. 265 § 18. The elements of armed assault with intent to rob are "that the defendant, armed with a dangerous weapon, assaults a person with a specific or actual intent to rob the person assaulted." *Commonwealth v. Rivera*, 833 N.E.2d 1113, 1122 n.15 (Mass. 2005). There are two alternative means of committing assault in Massachusetts: (1) "an attempted battery," or (2) "an immediately threatened battery." *Id.* These alternative means to establish the element of "assault" do not render the statute divisible; the factual theory on which the conviction was based remains irrelevant. *See Mathis*, 136 S. Ct. at 2257. A battery is "the intentional and unjustified use of force upon the person, *however slight*, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." *Commonwealth v. Campbell*, 226 N.E.2d 211, 218 (Mass. 1967) (emphasis added); *see also Commonwealth v. Burno*, 487 N.E.2d 1366, 1369 (Mass. 1986).

The force required for a conviction of armed assault with intent to rob is too minimal to qualify under the ACCA. *Johnson I* made clear that the "slightest offensive touching" is not what Congress had in mind when it drafted the ACCA. 559 U.S. at 139. Like the armed robbery statute, the Massachusetts armed assault with intent to rob statute does not require the use of a weapon, but rather, the possession of one, even if concealed and unbeknownst to the victim. *See Commonwealth v. Williams*, 45 N.E.2d 740, 741 (Mass. 1942). The statute's broad sweep includes offenses that need not involve violent force as defined by *Johnson I*, disqualifying it as a predicate offense under the ACCA. *See Castro-Vazquez*, 802 F.3d at 35.

12

**3.      Mr. Henderson's 1999 Florida nolo contendere aggravated assault plea (PSR ¶39) is not a qualifying conviction under ACCA.**

Mr. Henderson's alleged 1999 aggravated assault plea does not qualify as an ACCA predicate under recent Supreme Court precedent.  Mr. Henderson pled "no contest" under Fla. Stat. § 784.021, which provides: "An 'aggravated assault" is an assault: (a) With a deadly weapon without intent to kill; *or (b) With an intent to commit a felony.*" (emphasis added).[5]  This statute is "divisible" in that it presents elements in the alternative, "thereby defin[ing] multiple crimes."  *See Mathis*, 136 S. Ct. at 2249.  When facing divisible statutes, sentencing courts apply a modified categorical approach to determine if the conviction may qualify as an ACCA predicate and look to a "limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of."  *Id.*  The documents a sentencing judge may examine under the modified categorical approach in the case of a plea are "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  *Shepard v. United States*, 544 U.S. 13, 26 (2005).

A conviction based on a guilty plea can qualify as an ACCA predicate "only if the defendant 'necessarily admitted [the] elements of the generic offense.'"  *Descamps*, 133 S. Ct. at 2284 (quoting *Shepard*, 544 U.S. at 26).  Here, although the Probation Department claims Mr. Henderson pled to Fla. Stat. § 784.021(a), PSR ¶ 39, this is not true.  His plea agreement states he pled no contest to violating Fla. Stat. § 784.02, *without specifying a subsection. See* Exhibit A.  Under § 784.021(b), as discussed below, a defendant may be convicted without the use of violent

---

[5] Mr. Henderson's plea agreement is attached as Exhibit A.  It clearly does not specific which sub-section of the statute Mr. Henderson plead to.

force. The additional alleged facts provided in the PSR from the Florida Department of Corrections, PSR ¶ 39, are not facts to which the sentencing judge may look when determining the offense's status under the ACCA. *See Shepard*, 544 U.S. at 26.[6] Thus, because Mr. Henderson could have violated Florida's aggravated assault statute without violent force—that is "force capable of causing physical pain or injury to another person," *Johnson I*, 559 U.S. at 138—his plea cannot qualify as a predicate offense.

Under Florida law, an assault is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011. Although the definition uses the word "violence," it does not define the amount of "physical force" necessary to sustain a conviction. *See Casper v. United States*, Civ. No. 1:16-cv-001220MR, 2016 U.S. Dist. LEXIS 86098, at *15 (W.D.N.C. July 1, 2016) (explaining a "threat . . . to do violence" does not necessarily require physical force, as reinforced by the Supreme Court's explanation that "violence" can mean "even the slightest offensive touching" (citing *United States v. Castleman*, 134 S. Ct. 1405, 1411–13 (2014)). As argued above, in the First Circuit, crimes that

---

[6] The Supreme Court has repeatedly noted the importance of the requirement of limiting reliance to only *Shepard* documents, for important, principled reasons: As the Supreme Court made clear last year in *Mathis*, 136 S.Ct. at 2248:

> Distinguishing between elements and facts is therefore central to ACCA's operation. 'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty. Facts, by contrast are mere real-world things—extraneous to the crime's legal requirements. (We have sometimes called them 'brute facts' when distinguishing them from elements.) They are 'circumstance[s]' or 'event[s]' having no 'legal effect [or] consequence': In particular, they need neither be found by a jury nor admitted by a defendant. And the ACCA, as we have always understood it, cares not a whit about them. (citations omitted).

B4634422.9

may be found with the "slightest use of force" fall short of the "violent force" required by *Johnson I. See Castro-Vazquez*, 802 F.3d at 37.

The fact that § 784.021(b) requires that the assault be with an intent to commit a felony does not alter the analysis. As one Florida Circuit Judge has observed, "aggravated assault includes any assault with intent to commit a felony" and a violation would occur "if a prisoner states with sincerity that he is going to kick a guard" because assaulting a correctional officer is a felony under a Florida law. *Clark v. State*, 779 So. 2d 343, 345 (Fla. Ct. Appeals 2000) (Altenbernd, J., concurring).

Although the Eleventh Circuit has held aggravated assault under Florida law is a predicate felony for purposes of the ACCA, *Turner v. Warden Coleman FCI*, 709 F.3d 1328, 1338 (11th Cir. 2013), that holding is not binding on the First Circuit or this Court, and should be rejected. *See Casper*, 2016 U.S. Dist. LEXIS 86098, at *14–15 (refusing to apply Eleventh Circuit law in the District of North Carolina). Furthermore, this Court should not follow this Eleventh Circuit holding because the court so held without addressing the *mens rea* required for convictions under Florida law. In Florida, aggravated assault may be found with a "culpable negligence" *mens rea*, which is not sufficient intent to qualify as an ACCA predicate. *See In re Venta*, No. 16-12698-J, 2016 U.S. App. LEXIS 16157, at *6 (11th Cir. June 15, 2016) (Martin, C. J., dissenting) (citing *LaValley v. State*, 633 So.2d 1126, 1127 (Fla. Dist. Ct. App. 1994); *Kelly v. State*, 552 So. 2d 206, 208 (Fla. Dist. Ct. App. 1989); *Green v. State*, 315 So. 2d 499, 499-500 (Fla. Dist. Ct. App. 1975); *Du Pree v. State*, 310 So. 2d 396, 398 (Fla. Dist. Ct. App. 1975)). Indeed, even within the Eleventh Circuit, judges have written in support of this argument against *Turner. See In re Edwards*, No. 16-12693-J, 2016 U.S. App. LEXIS 15747, at *7–8 (11th Cir. June 16, 2016) (Pryor, C.J., dissenting); *In re Venta*, 2016 U.S. App. LEXIS 16157, at *6–7 (11th Cir. June 15, 2016) (Martin,

C. J., dissenting).  As Judge Martin explained, a "culpable negligence" *mens rea* does not "meet the 'elements clause' definition of 'violent felony,' which requires as an element the active and intentional employment of force, which requires more than negligence or recklessness."  *In re Venta*, 2016 U.S. App. LEXIS 16157, at *6 (citing *Leocal v. Ashcroft*, 543 U.S. 1, 9–10 (2014)).  First Circuit law requires a greater *mens rea* to qualify as an ACCA predicate.  *See United States v. Fish*, 758 F.3d 1, 16 (1st Cir. 2014).  With only a *mens rea* requirement of "culpable negligence," this Court cannot say that Mr. Henderson's no contest plea of aggravated assault constitutes a conviction that "necessarily" involved violent force, thereby qualifying as a predicate under the ACCA.

**4.    Mr. Henderson's 1990 convictions for assault by means of a dangerous weapon and armed assault with to murder ( PSR ¶35) are not qualifying convictions under ACCA.**

Mr. Henderson's alleged 1990 convictions for assault by means of a dangerous weapon ("ADW") and armed assault with intent to murder should not be held to be ACCA predicates.  ADW may be found by two theories: the attempted battery theory; and the threatened-battery theory.  *See, e.g.*, *Commonwealth v. Porro*, 939 N.E.2d 1157, 1163 (Mass. 2010); *Commonwealth v. Melton*, 763 N.E.2d 1092, 1096 (Mass. 2002).  Because Massachusetts precedent may permit conviction for ADW under a recklessness theory, it should not qualify as a predicate offense.  *See Fish*, 758 F.3d at 16.  Alternatively, the court should consider whether ADW is a divisible statute, and require the government to produce the requisite documents to show Mr. Henderson's conviction was not based on a recklessness theory.  *United States v. Tavares*, No. 14-2319, 2016 U.S. App. LEXIS 21491, *45 (1st Cir. Dec. 1, 2016).  Mr. Henderson makes this argument so that it can be preserved; counsel for Mr. Henderson recognize that it does not reflect existing law.  *See United States v. Hudson*, 823 F.3d 11, 17–18 (1st Cir. 2016).

16

Additionally, Mr. Henderson's conviction for armed assault with intent to murder is not a predicate under the ACCA. *See United States v. Edwards*, No. 13-10342 (D. Mass. Oct. 13, 2015) (Tr. Of Sentencing Hearing), ECF No. 155. A conviction under Mass. Gen. Laws ch. 265 §18(b) does not require the use or display of a weapon or that the victim be in fear of, or even aware of, the assault. *See Salemme v. Commonwealth*, 348 N.E.2d 799, 801 (Mass. 1976). This Court should rule as Judge Woodlock did in *Edwards*, and find that Mr. Henderson's armed assault with intent to murder conviction is not an ACCA predicate.[7]

5.      **Alternatively, the government cannot reliably establish either that Mr. Henderson pleaded guilty to the offenses identified in PSR ¶35 or that any such conviction satisfied constitutional requirements.**

The Court should also specifically decline to rely on the conviction referred to in PSR ¶ 35 because the existing documents about that alleged conviction are procedurally deficient, and do not establish either that Mr. Henderson was convicted of the alleged offense or, even if he was, that his constitutional rights were respected in that process. PSR ¶35 states that the "[d]etails of the offense are unknown." But Mr. Henderson's May 13, 2003 PSR in Docket No. 01-10264 (the case before Judge Wolf that the government later dismissed) *does* provide alleged details of that offense; it refers to an indictment which allegedly charges that "defendant, being armed with a handgun, did assault Kyanne Strother, with intent to murder her and unlawfully possessed a handgun." 2003 PSR ¶ 37.[8] The Probation Department's decision *not* to include details from the Department's own 2003 PSR is evidence of the fact that the court records of that conviction are

---

[7] Recently, Judge Gorton rejected this argument in *United States v. McGregor*, Crim. No. 07-10312-NMG, 2017 U.S. Dist. LEXIS 3415, *5–6 (Jan. 10, 2017).

[8] To highlight the irregularities here, the only "Kyanne Strother" the police report on the incident identifies Kyane Strother as male not female.

B4634422.9

insufficiently reliable evidence of the nature of the charges and the effective protection of Mr. Henderson's constitutional rights, to form the basis of any Criminal History points, never mind an ACCA enhancement.[9]

Counsel for Mr. Henderson has obtained certain records, as described further in the Affidavit of Martin F. Murphy ("Murphy Aff."), filed herewith, relating to that alleged conviction. *See* Exhibit B Murphy Aff. They show procedural irregularities and clear constitutional deficits.

A. *The Superior Court Record Relating to Indictment No. 094707.*

According to the Suffolk Superior Court docket sheet for Indictment No. 097407, the Suffolk County grand jury indicted Henderson on March 6, 1991 for armed assault with intent to murder "one Kyane Strother" nearly two years earlier, on March 8, 1989. Exhibit B Murphy Aff., ¶3. The docket sheet indicates that Henderson first appeared in Suffolk Superior Court to face that charge on <u>April 4, 1991</u>; that counsel (E. Levine) was appointed for Henderson on that date; and that he pleaded guilty *at arraignment* on that date. *Id.* The docket reflects that, after accepting Henderson's guilty plea, the Court imposed a five-year MCI Concord prison sentence, concurrent with a sentence imposed on Indictment No. 093101 (an unrelated firearms case indicted in January 1991). *Id.* The docket indicates that the proceedings were electronically recorded; counsel has made inquiry of the Clerk's office and been informed that no recording currently exists. *Id.*

---

[9] Defense counsel unsuccessfully sought to vacate this conviction in Superior Court.

*B. The Superior Court Record Relating to Indictment No. 094708-09.*

According to the Suffolk Superior Court docket sheets for Indictment Nos. 097408 and 094709, the Suffolk County grand jury indicted Henderson on March 6, 1991 for assault by means of dangerous weapon against Kyane Strother on March 8, 1989 (No. 097408) and unlawful carrying a firearm on the same date (No. 094709). Exhibit B Murphy Aff. ¶ 4. The docket sheet indicates that Henderson first appeared in Suffolk Superior Court to face those charges on April 5, 1991 (the day *after* he allegedly appeared on Indictment No. 094707); that counsel (E. Levine) was appointed for Henderson on April 5, 1991; and that he pleaded guilty *at arraignment* on that date. *Id.* The docket reflects that, after accepting Henderson's guilty plea, the Court imposed five-year MCI Concord prison sentences on each indictment, concurrent with a sentence imposed on Indictment No. 093101 (the unrelated firearms case indicted in January 1991) and the five-year MCI Concord prison sentence imposed on Indictment No. 094707 (the assault with intent to murder case). *Id.* The docket indicates that the proceedings were electronically recorded; counsel has made inquiry of the Clerk's office and been informed that no recording currently exists. *Id.*

*District Court Records Relating to the Same Allegations.*

The files of the Roxbury District Court contain records indicating that on March 9, 1989, a complaint and warrant was obtained against Henderson for charges relating to an alleged armed assault and related charges against Kyane Strother. Exhibit B Murphy Aff. ¶5. Henderson did not appear in District Court on those charges until more than one year later, on March 15, 1990. *Id.* The charges were dismissed in the District Court on April 20, 1990, with no indication that the case was bound over to the grand jury. *Id.*

19

A. <u>There is No Reliable Evidence Mr. Henderson Pled Guilty to the Indictment</u>

Outside of the questionable indictments and docket sheet, there is no evidence to indicate that these pleas ever took place. There is no record of a plea colloquy, transcript of the proceedings, or any other documentation indicating that Mr. Henderson was aware of the charges.

Most pointedly, and with respect to Indictments No. 094708 and 094709, Mr. Henderson was not even in Court on the day the records show he allegedly pled guilty to those charges. Records from the Massachusetts Department of Correction inspected by defendant's present counsel indicate that Mr. Henderson was sentenced to MCI-Concord on <u>April 4, 1991</u> (this is consistent with the record of his conviction on the unrelated firearms charge, Indictment No. 09310) and did not go back to Court for any hearing before he was released from custody on October 15, 1993. Exhibit B Murphy Aff. ¶ 7. DOC records contain no indication that Mr. Henderson was brought to Suffolk County Superior Court on April 5, 1991. *Id.*

If Mr. Henderson was not even in court on the day he allegedly pled guilty to indictments Nos. 094708 and No. 094709, any alleged pleas to these charges could not have been given voluntarily with sufficient awareness of the relevant circumstances. *See Commonwealth v. Fernandes*, 390 Mass. 714, 715 (1984) ("A plea is valid only when the defendant offers it voluntarily, with sufficient awareness of relevant circumstances"). Without appearing in Court, it is impossible for Mr. Henderson to have been given a constitutionally adequate plea colloquy, as there is no way the judge could have conducted a plea colloquy which made a "real probe of the defendants' mind." *Id.* at 716.

And even Mr. Henderson had pled guilty to any offense, either on April 4 or on April 5, 1991, his plea would be defective, because he could not have been informed of the elements of the charges to which he plead or the constitutional rights he would waive by any plea.

20

For a guilty plea to be made voluntarily, a defendant must be made aware of the nature of the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 644–45 (1976). Moreover, a defendant's plea is not knowing or voluntary unless the Court accepting the plea "ensure[]s that the defendant is informed, on the record and in open court, of the three constitutional rights which are waived by a plea of guilty: 'the right to trial, the right to confront one's accusers, and the privilege against self-incrimination." *Commonwealth v. Correirea*, 43 Mass. App. Ct. 714, (1997) (citation omitted).

In this case, there are no Court records that reliably establish that Mr. Henderson pled guilty to indictments Nos. 094707-9. Court records do not provide any evidence as to a plea colloquy, nor is there any other evidence before the Court that Henderson has ever made any statements admitting to the facts that constitute Assault by Means of a Dangerous Weapon or Armed Assault with Intent to Murder.

Moreover, even if the Court were to assume that Mr. Henderson did plead guilty to any of the indictments, the same records show that a miscarriage of justice must have occurred because Henderson did not receive effective assistance of counsel. The docket sheets indicate that counsel was first appointed on the charges at arraignment, and that Henderson pled guilty at arraignment. A plea offered at arraignment by a defendant appointed counsel on the charges in question *that day* raise obvious questions about a defendant's right to have constitutionally effective representation, because appointed counsel would have no meaningful opportunity to take the steps that minimally effective counsel should take—to investigate the case, explore potential motions, consider potential defenses, or review the grand jury minutes with the client, or explain the elements of the offenses to the client. The failure to take these steps rendered Henderson's counsel constitutionally ineffective and requires that the Court not treat these alleged convictions as an

ACCA predicate. Thus, the docket establishes that counsel failed to undertake any of the steps needed to provide minimally effective representation, including investigation into the merits of the case, exploration of possible motions, and the consideration of possible defenses. Given the very brief amount of time from counsel's appointment as counsel until Mr. Henderson allegedly pled guilty, it is simply not possible that even the best lawyer could have taken the steps necessary to provide constitutionally effective assistance, certainly in a case as serious as the one Henderson purportedly faced. It is likewise simply not possible that counsel could have considered possible defenses, motions, and trial strategies and intelligently advised Mr. Henderson on the risks of going to trial and the consequences of pleading guilty to the offense.

For these reasons in particular, and beyond Mr. Henderson's general objection to the Court's counting Criminal History points without reliable evidence of a plea, Henderson specifically objects the Court counting the offenses in PSR ¶35 as an ACCA prediction (or as part of his criminal history).

### B. Calculating Mr. Henderson's Base Offense Level

Because Mr. Henderson is not an armed career criminal, United States Sentencing Guidelines § 4B1.4 does not apply. Rather, his sentence is governed by § 2K2.1. That section, however, like the ACCA, requires the Court to consider whether the Mr. Henderson has one or more prior convictions for crimes of violence. *See* United States Sentencing Guidelines Manual § 2K2.1(a)(2)(4) (U.S. Sentencing Comm'n 2004). The U.S.S.G. definition of "crime of violence" mirrors "violent felony" in the ACCA. *See* U.S.S.G. §4B1.2; *see also Castro-Vazquez*, 802 F.3d at 35–38, 35 n.4 (explaining the two phrases have the same meaning). Consequently, because, as argued above, none of Mr. Henderson's prior convictions qualifies as a crime of violence, his correct base offense level is 14, § 2K2.1(a)(7).

B4634422.9

Alternatively, if the Court were to conclude (over Mr. Henderson's objection) that *one* of Mr. Henderson's prior convictions was a violent felony, his correct base offense level would be 20, *see* § 2K2.1(a)(4). And if the Court were to conclude (again, over Mr. Henderson's objection) that *two* or Mr. Henderson's prior convictions were for violent felonies, his correct base offense level would be 24, *see* § 2K2.1(a)(2).

### C.  Mr. Henderson is entitled to credit for acceptance of responsibility.

U.S.S.G. § 3E1.1 provides that the defendant is entitled to a two-level reduction if he "clearly demonstrates acceptance of responsibility for his offense." Application notes to that section provide that the Court should consider, among other factors, whether the defendant "truthfully admit[ted] the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1 cmt. n.1(A). As the Commission further explained:

> Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

U.S.S.G. § 3E1.1 cmt. n.2.

This is one of those rare situations. In 2013, at the hearing on his Motion to Suppress, Mr. Henderson acknowledged that he possessed had a firearm on January 2, 2011. Tr. 84 at 139:3–140:45. In 2016, he again confirmed that he would accept responsibility for his offense by seeking a pre-trial declaration that he did not qualify as an ACCA predicate. *See* Docket No. 205, 206. The trial here was required solely because the government took the position—incorrectly, for the reasons stated above—that Mr. Henderson should be sentenced as an Armed Career Criminal. Mr.

B4634422.9

Henderson should therefore be entitled to a two-point reduction to his offense level for acceptance of responsibility.

### D. Criminal History Category

Based on U.S. Sentencing Guidelines § 4A1.1 (and including, for the sake of argument, all of the offenses identified in the PSR) Mr. Henderson's total criminal history score is seven, which puts him (barely) in criminal history category IV. U.S.S.G. § 4A1.1. Mr. Henderson, has however, objected, *see* PSR Objections, at 2–4, to the inclusion of *any* criminal history points absent proof by the government at the sentencing hearing beyond a reasonable doubt that:

- Mr. Henderson was, in fact, the individual charged in the crimes resulting in the conviction described in the PSR; and

- Mr. Henderson was represented by constitutionally effective counsel, *Gideon v. Wainwright*, 372 U.S. 335 (1963), and that his other constitutional rights were protected in the sentencing process, as reflected by competent evidence, such as a plea colloquy, a plea agreement, or a sentencing transcript.[10]  *See, e.g.*, *Alleyne v. United States*, 133 S. Ct. 2151 (2013); *Henderson v. Morgan*, 426 U.S. 637, 646 (1976);  *United States v. Tucker*, 404 U.S. 443, 448–49 (1972); *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969).

---

[10] Counsel for Mr. Henderson recognizes that the Court's adoption of this position would, as a general principle, require a change in existing law.  *See United States v. Acosta*, 67 F.3d 334 (1st Cir. 1995). However, as noted above, the significant procedural deficits associated with the records of his alleged 1990 conviction (*see* supra at 17–22, and Exhibit A) preclude reliance on this alleged conviction as a basis for the inclusion of any criminal history points.

B4634422.9

### E. Defendant's Possible Sentencing Guidelines Ranges

Because the Court's determination of Mr. Henderson's range depends on its decisions on the legal issues raised above, he provides the following tables to describe the possible outcomes. The first table assumes that the Court awards the defendant credit for acceptance of responsibility; the second assumes the Court does not.

**TABLE ONE**

| Base Offense Level | With Acceptance Reduction | Criminal History[11] | Guidelines Range |
|---|---|---|---|
| 14[12] | 12 | IV | 21-27 months |
| 20[13] | 18 | IV | 41-53 months |
| 24[14] | 22 | IV | 63-78 months |

---

[11] As noted, *see* supra at 17–22, defendant objects to the assignment of any criminal history points absent proof beyond a reasonable doubt of identity and a constitutionally adequate basis for conviction.

[12] Assumes no prior convictions for crimes of violence.

[13] Assumes one prior conviction for crime of violence.

[14] Assumes two prior convictions for crimes of violence.

B4634422.9

**TABLE TWO**

| Base Offense Level | Without Acceptance Reduction | Criminal History[15] | Guidelines Range |
|---|---|---|---|
| 14[16] | 14 | IV | 27-33 months |
| 20[17] | 20 | IV | 51-63 months |
| 24[18] | 24 | IV | 77-96 months |

Mr. Henderson has already served more than 72 months pending sentencing. This equates, assuming standard amounts of earned good time, *see* 18 U.S.C. § 3624(b), to an imposed sentence of 84 months.

### F. The Court should sentence Mr. Henderson to time served.

Beyond the guidelines, "'a sentencing judge should engage in a . . . holistic inquiry,' by considering 'a tapestry of factors, through which runs the thread of [the] overarching principle' of parsimony." *United States v. Russell*, 537 F.3d 221, 228 (1st Cir. 2008) (quoting *United States v. Rodriguez*, 527 F.3d 221, 228) (1st Cir. 2008)). By law, the ultimate disposition must be "sufficient, but not greater than necessary" to advance the statutory purposes of sentencing. *See* 18 U.S.C. § 3553(a). Here, that sentence should be "time served."

Mr. Henderson has a background few would exchange for their own. Mr. Henderson father was murdered when he was two, and his mother suffered from a heroin addiction. His mother,

---

[15] As noted, *see* supra at 17–22, defendant objects to the assignment of any criminal history points absent proof beyond a reasonable doubt of identity and a constitutionally adequate basis for conviction.

[16] Assumes no prior convictions for crimes of violence.

[17] Assumes one prior conviction for crime of violence.

[18] Assumes two prior convictions for crimes of violence.

B4634422.9

father, and grandparents are all now deceased. (His mother died when he was in prison awaiting trial; he was not permitted to attend her funeral.) The PSR concludes that Mr. Henderson resorted to crime when young, but he has had no convictions—apart from this one—in 16 years. In 2008, he was shot eight times; he still has significant disabilities that he must overcome.

Mr. Henderson has established strong familial ties in recent years. Specifically, Mr. Henderson is engaged to marry Ebony Nicholson, with whom he has been in a relationship for almost ten years. They also have a daughter together, who is now eight years old. Mr. Henderson has also helped raise Ms. Nicholson's daughter from a prior relationship, who is now 13 years old. When Mr. Henderson is released, he hopes to leave the state and run a food truck. During his five-year incarceration between 2001 and 2006 (for a charge that was ultimately dismissed), Mr. Henderson learned to read and obtained his GED. He is also skilled at basic plumbing, carpentry, furniture making, and cooking. Although his 2008 injury made it difficult for him to maintain employment in the years immediately before his 2011 incarceration, he has been employed as a visiting room cleaner throughout his current incarceration.

The facts of this case—beyond those established by the facts of this conviction—remain seriously in dispute. The government has, at nearly every turn, stated that Mr. Henderson was seeking confrontation in late December 2010, but the government has never offered reliable evidence to support that allegation. Mr. Henderson has consistently maintained that he carried the gun in self-defense. The government has informed defense counsel of several witnesses who told the government that the Academy Homes gang had a "hit" out on Henderson in 2011. The government has declined, despite the Court's Order, *see* Docket No. 240, to produce details which Henderson has sought, by letter and motion, which would help Mr. Henderson provide the Court context for his actions in January 2011. *See* Docket No. 239.

B4634422.9

There is, in additional, another compelling circumstance that counsels in favor of a "time served" sentence. A decade ago, Mr. Henderson spent five years, over ten percent of his life, awaiting trial in federal custody on a case that was later dismissed after the First Circuit concluded that the stop that his arrest was unconstitutional. *United States v. Henderson*, 463 F.3d 27 (1st Cir. 2006). Worse yet, common sense makes clear, that as a practical matter, he was singled out and arrested in that case (where the officer testified that he was stopped because, as a *passenger* in car, for not wearing a seat belt) on pretext, because he was black. Few defendants this Court sentences have previously served five years in federal custody after being stopped, unconstitutionally, in circumstances suggesting that the police racially profiled them. [19]

Finally, Mr. Henderson requests that the Court not order supervised release. The Guidelines' provisions regarding supervised release only mandate supervised release when it is required by statute. U.S.S.G. § 5D1.1(a)(1). That is not the case here; 18 U.S.C. § 922(g) does not require supervised release. Although § 5D1.1(a) also counsels sentencing judges to order supervised release when imposing a sentence of imprisonment of more than one year, this is a case

---

[19] "Driving while black" is a phrase that has been used for decades to describe the baseless traffic stops that disproportionately affect black Americans and lead to the searches, fines, and arrests that are all too common for people of color. This problem is far from new, and unfortunately, it seems far from disappearing. *See, e.g.*, Sharon LaFraniere & Andrew W. Lehren, *The Disproportionate Risks of Driving While Black*, N.Y. Times, Oct. 24, 2015, http://www.nytimes.com/2015/10/25/us/racial-disparity-traffic-stops-driving-black.html?_r=0 (concluding from its own study that officers in North Carolina are "more likely to stop black drivers for no discernible reason," and documenting changes in New Jersey, Rhode Island, and Connecticut law following findings of racial profiling); James Warren, *Driving While Black*, The Atlantic, July 2009, http://www.theatlantic.com/magazine/archive/2009/07/driving-while-black/307625/ (reporting on racial disparities as shown by data collected in Illinois); David A. Harris, *Driving While Black: Racial Profiling on our Nation's Highways*, An American Civil Liberties Union Special Report, June 1999, https://www.aclu.org/report/driving-while-black-racial-profiling-our-nations-highways (providing historical data on racial profiling in traffic stops and the phrase "driving while black").

28

where, pursuant to the principles described in 18 U.S.C. §3551, supervised release is not required.

As a practical matter, there is little supervised release could do. Mr. Henderson does not need drug treatment. He is 46 years old; even assuming the Probation Department offered non-drug treatment that might help some defendants, there is no reason to believe that would appropriate here. Placing Mr. Henderson on supervised release would also likely make it more difficult to move out of state, a plan that is certainly most likely to keep him safe, because his ability to travel would likely be subject to his acceptance by the Probation Department of another District.

**III.**    <u>Conclusion</u>

For the foregoing reasons, defendant Marcel Henderson respectfully requests that the Court sentence him to time served, and, to enable him to move out of Massachusetts, no period of supervised release.

Respectfully submitted,

Marcel Henderson
By his attorneys,


*/s/ Martin F. Murphy*
Martin F. Murphy BBO # 363250
Jennifer A. Kirby BBO # 678885
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: 617-832-1000
Facsimile: 617-832-7000
mmurphy@foleyhoag.com
jkirby@foleyhoag.com


DATED: January 12, 2017

B4634422.9

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 12th day of January 2017.

*/s/ Jennifer A. Kirby*
Jennifer A. Kirby

B4634422.9